# EXHIBIT D

# GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this *"Guaranty"*) is made as of May 27, 2021, by and between PACEM ESTATE HOLDINGS LLC, a Florida limited liability company (the *"Guarantor"*), in favor of WAYGAR CAPITAL INC., as agent for NINEPOINT CANADIAN SENIOR DEBT MASTER FUND L.P. (the *"Lender"*).

## WITNESSETH:

WHEREAS, the Guarantor is an affiliate of PACEM Defense LLC, a Virginia limited liability company (*"Defense"*), and ALS, Inc. (f/k/a AMTEC Less Lethal Systems, Inc.), a Wisconsin corporation (*"Amtec"*; and together with Defense, collectively, the *"Borrowers"* and each a *"Borrower"*); and

WHEREAS, the Borrowers have obtained and may from time to time hereafter obtain credit and other financial accommodations from the Lender and has incurred and may from time to time hereafter incur liabilities to the Lender; and

WHEREAS, the Borrowers provide the Guarantor with substantial financial, management, administrative, technical and design support; and

WHEREAS, the interdependent nature of the businesses of the Guarantor and the Borrowers is such that the viability of the Guarantor is dependent upon the continued success of the Borrowers and upon the continuation of the Borrowers' business relationships with the Guarantor, and the continuation thereof necessitates the Borrowers' access to credit and other financial accommodations from the Lender which the Lender will only make available on the condition, among others, that the Guarantor guarantee all indebtedness, obligations and liabilities of the Borrowers from time to time owing to the Lender; and

WHEREAS, the Guarantor will directly and substantially benefit from credit and other financial accommodations extended and to be extended by the Lender to the Borrower.

NOW, THEREFORE, FOR VALUE RECEIVED, and in consideration of advances made or to be made, or credit accommodations given or to be given, to the Borrowers by the Lender from time to time, the Guarantor hereby agrees as follows:

1.   The Guarantor hereby guarantees the full and prompt payment to the Lender at maturity and at all times thereafter of any and all indebtedness, obligations and liabilities of every kind and nature of the Borrowers owing to the Lender (including liabilities of partnerships created or arising while the Borrowers may have been or may be a member thereof), however evidenced, whether now existing or hereafter created or arising (and whether arising before or after the filing of a petition in bankruptcy and including all interest, costs, fees, and charges after the entry of an order for relief in a case under Title 11 of the United States Bankruptcy Code or any similar proceeding, whether or not such interest, costs, fees and charges would be an allowed claim in such proceeding), whether direct or indirect, absolute or contingent, or joint or several, and howsoever owned, held or acquired, whether through discount, overdraft, purchase, direct

-969728073.docx
4292694

loan or as collateral, or otherwise (hereinafter all such indebtedness, obligations and liabilities being collectively referred to as the *"Indebtedness"*). Notwithstanding anything in this Guaranty to the contrary, the right of recovery against the Guarantor under this Guaranty shall not exceed $1.00 less than the lowest amount which would render the Guarantor's obligations under this Guaranty void or voidable under applicable law, including fraudulent conveyance law.

2. The Guarantor further agrees to pay all costs and expenses, legal and/or otherwise (including court costs and reasonable attorneys' fees), suffered or incurred by the Lender in enforcing or endeavoring to enforce this Guaranty, in enforcing or endeavoring to collect the Indebtedness, or any part thereof, and in protecting, defending or enforcing this Guaranty in any litigation, bankruptcy or insolvency proceedings or otherwise.

3. The Guarantor agrees that, upon demand, the Guarantor will then pay to the Lender the full amount of the Indebtedness.

4. The Guarantor agrees that it will not exercise or enforce any right of exoneration, contribution, reimbursement, recourse or subrogation available to the Guarantor against any person liable for payment of the Indebtedness, or as to any security therefor, unless and until the full amount owing to the Lender of the Indebtedness has been paid and all commitments, if any, of the Lender to extend credit to or for the account of the Borrowers which, when made, would constitute Indebtedness shall have terminated. The payment by the Guarantor of any amount or amounts to the Lender pursuant hereto shall not in any way entitle any the Guarantor, either at law, in equity or otherwise, to any right, title or interest (whether by way of subrogation or otherwise) in and to the Indebtedness or any part thereof or any collateral security therefor or any other rights or remedies in any way relating thereto or in and to any amounts theretofore, then or thereafter paid or applicable to the payment thereof howsoever such payment may be made and from whatsoever source such payment may be derived unless and until all of the Indebtedness and all costs and expenses suffered or incurred by the Lender in enforcing this Guaranty have been paid in full and all commitments, if any, of the Lender to extend credit to or for the account of the Borrowers which, when made, would constitute Indebtedness shall have terminated and unless and until such payment in full and termination, any payments made by the Guarantor hereunder and any other payments from whatsoever source derived on account of or applicable to the Indebtedness or any part thereof shall be held and taken to be merely payments in gross to the Lender reducing pro tanto the Indebtedness.

5. The Lender may, without any notice whatsoever to any one, sell, assign, or transfer all of the Indebtedness, or any part thereof, or grant participations therein, and in that event each and every immediate and successive assignee, transferee, or holder of or participant in all or any part of the Indebtedness, shall have the right to enforce this Guaranty, by suit or otherwise, for the benefit of such assignee, transferee, holder or participant, as fully as if such assignee, transferee, holder or participant were herein by name specifically given such rights, powers and benefits; but the Lender shall have an unimpaired right to enforce this Guaranty for the benefit of the Lender or any such participant, as to so much of the Indebtedness that it has not sold, assigned or transferred.

-2-

6. This Guaranty is a continuing, absolute and unconditional Guaranty, and shall remain in full force and effect until written notice of its discontinuance executed by the Borrowers and the Guarantor shall be actually received by the Lender, and also until any and all of the Indebtedness created or existing before receipt of such notice shall be fully paid and all commitments, if any, of the Lender to extend credit to or for the account of each Borrower which, when made, would constitute Indebtedness shall have terminated. This is a guaranty of payment and not of collection, and in case the Borrowers fails to pay any Indebtedness when due, the Guarantor agrees to make such payment or to cause such payment to be made punctually as and when the same shall become due and payable, whether at stated maturity, by acceleration or otherwise, and as if such payment were made by the Borrowers. The dissolution of any of the Guarantor shall not terminate this Guaranty until notice of such dissolution shall have been actually received by the Lender, nor until all of the Indebtedness, created or existing or committed to be extended in each case before receipt of such notice shall be fully paid.

7. In case of dissolution, liquidation or insolvency (howsoever evidenced) of, or the institution of bankruptcy or receivership proceedings against the Borrowers or the Guarantor, all of the Indebtedness which is then existing shall, at the option of the Lender, immediately become due or accrued and payable from the Guarantor. All dividends or other payments received from the Borrowers or on account of the Indebtedness from whatsoever source, shall be taken and applied as payment in gross, and this Guaranty shall apply to and secure any ultimate balance that shall remain owing to the Lender.

8. The liability hereunder shall in no way be affected or impaired by (and the Lender is hereby expressly authorized to make from time to time, without notice to anyone), any sale, pledge, surrender, compromise, settlement, release, renewal, extension, indulgence, alteration, substitution, exchange, change in, modification or other disposition of any of the Indebtedness, either express or implied, or of any contract or contracts evidencing any thereof, or of any security or collateral therefor or any guaranty thereof. The liability hereunder shall in no way be affected or impaired by any acceptance by the Lender of any security for or other guarantors upon any of the Indebtedness, or by any failure, neglect or omission on the part of the Lender to realize upon or protect any of the Indebtedness, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, creditors or property of said Borrowers possessed by the Lender toward the liquidation of the Indebtedness, or by any application of payments or credits thereon. The Lender shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on the Indebtedness, or any part of same. In order to hold the Guarantor liable hereunder, there shall be no obligation on the part of the Lender at any time to resort for payment to the Borrowers or to any other guarantor, or to any other person or corporations, their properties or estate, or resort to any collateral, security, property, liens or other rights or remedies whatsoever, and the Lender shall have the right to enforce this Guaranty irrespective of whether or not other proceedings or steps are pending seeking resort to or realization upon or from any of the foregoing are pending.

9. [Reserved.]

10. All diligence in collection or protection, and all presentment, demand, protest and/or notice, as to any and everyone, whether or not the Borrowers or the Guarantor or others, of

dishonor and of default and of non-payment and of the creation and existence of any and all of the Indebtedness, and of any security and collateral therefor, and of the acceptance of this Guaranty, and of any and all extensions of credit and indulgence hereunder, are expressly waived.

11.     No act of commission or omission of any kind, or at any time, upon the part of the Lender in respect to any matter whatsoever, shall in any way affect or impair this Guaranty.

12.     The Guarantor waives any and all defenses, claims and discharges of the Borrowers, or any other obligor, pertaining to the Indebtedness, except the defense of discharge by payment in full.  Without limiting the generality of the foregoing, the Guarantor will not assert, plead or enforce against the Lender any defense of waiver, release, discharge in bankruptcy, statute of limitations, res judicata, statute of frauds, antideficiency statute, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to the Borrowers or any other person liable in respect of any of the Indebtedness, or any set-off available against the Lender to the Borrowers or any such other person, whether or not on account of a related transaction.  The Guarantor agrees that the Guarantor shall be and remain liable for any deficiency remaining after foreclosure of any mortgage or security interest securing the Indebtedness, whether or not the liability of the Borrowers or any other obligor for such deficiency is discharged pursuant to statute or judicial decision.

13.     If any payment applied by the Lender to the Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of the Borrowers or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence, notwithstanding such application, and this Guaranty shall be enforceable as to such of the Indebtedness as fully as if such application had never been made.

14.     The liability of the Guarantor under this Guaranty is in addition to and shall be cumulative with all other liabilities of the Guarantor after the date hereof to the Lender as a Guarantor of the Indebtedness, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

15.     Any invalidity or unenforceability of any provision or application of this Guaranty shall not affect other lawful provisions and applications hereof, and to this end the provisions of this Guaranty are declared to be severable.

16.     Any demand for payment on this Guaranty or any other notice required or desired to be given hereunder to the Guarantor shall be in writing (including, without limitation, notice by telecopy) and shall be given to the relevant party at its address set forth in the Loan Agreement dated as of the date hereof among the Borrowers and the Lender.  Each such notice, request or other communication shall be effective (i)if given by telecopier, when such telecopy is transmitted to the telecopier number specified in this Section and a confirmation of such telecopy has been received by the sender, (ii) if given by mail, five (5) days after such communication is deposited in the mail, certified or registered with return receipt requested, addressed as aforesaid or (iii) if given by any other means, when delivered at the addresses specified in this Section.

-4-

17. All payments to be made by the Guarantor hereunder shall be made in the same currency and funds in which the underlying Guaranteed Indebtedness is payable to the Lender in immediately available and freely transferable funds at the place of payment, all such payments to be paid without setoff, counterclaim or reduction and without deduction for, and free from, any and all present or future taxes, levies, imposts, duties, fees, charges, deductions, withholding or liabilities with respect thereto or any restrictions or conditions of any nature. If the Guarantor is required by law to make, or if any law requires, any deduction or withholding on account of any tax (but excluding any taxes imposed or measured by the net income of the Lender) or other withholding or deduction from any sum payable by the Guarantor hereunder to the Lender, the Guarantor shall pay any such tax or other withholding or deduction and shall pay such additional amount necessary to ensure that, after making any payment, deduction or withholding, the Lender shall receive and retain (free of any liability in respect of any payment, deduction or withholding) a net sum equal to what it would have received and so retained hereunder had no such deduction, withholding or payment been required to have been made.

18. If any judgment or order expressed in a currency (the *"Judgment Currency"*) other than the currency (the *"Currency of Account"*) in which the underlying Guaranteed Indebtedness is owed to the Lender is rendered against the Guarantor for the payment of any amount owing hereunder, the Lender, after recovery in full of the aggregate amount to which they are entitled pursuant to the judgment or order, will be entitled to receive immediately from the Guarantor the amount of any shortfall of the Currency of Account received by the Lender as a consequence of sums paid in such Judgment Currency (a *"Shortfall Payment"*) if such shortfall arises or results from any variation between the rate of exchange at which the Currency of Account is converted into the Judgment Currency for the purposes of such judgment or order and the rate of exchange at which the Lender is able, acting in a reasonable manner and in good faith, to purchase the Currency of Account with the amount of the Judgment Currency actually received by the Lender. Any Shortfall Payment due hereunder shall be due as a separate and independent obligation of the Guarantor and, until discharged, shall continue in full force and effect. The term *"rate of exchange"* includes, without limitation, any premiums and costs of exchange payable in connection with the purchase of or conversion into the Currency of Account.

19. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE OF NEW YORK in which state it shall be performed by the Guarantor and may not be waived, amended, released or otherwise changed except by a writing signed by the Lender. This Guaranty and every part thereof shall be effective upon delivery to the Lender, without further act, condition or acceptance by the Lender, shall be binding upon the Guarantor and upon the heirs, legal representatives, successors and assigns of the Guarantor, and shall inure to the benefit of the Lender, its successors, legal representatives and assigns. The Guarantor waives notice of the Lender's acceptance hereof. This Guaranty may be executed in counterparts and by different parties hereto on separate counterpart signature pages, each of which shall be an original, but all together to be one and the same instrument.

20. The Guarantor hereby submits to the nonexclusive jurisdiction of any United States District Court for the Southern District of New York and of any New York state court sitting in the Borough of Manhattan in New York City for purposes of all legal proceedings arising out of or relating to this Guaranty or the transactions contemplated hereby. The Guarantor irrevocably

Case 5:26-cv-00207-FL    Document 1-4    Filed 04/01/26    Page 6 of 25

waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such court has been brought in an inconvenient forum. THE GUARANTOR AND THE LENDER HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY.

[SIGNATURE PAGE TO FOLLOW]

Case 5:26-cv-00207-FL    Document 1-4    Filed 04/01/26    Page 7 of 25

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be executed and delivered as of the date first above written.

"GUARANTOR"

PACEM ESTATE HOLDINGS LLC

By ⟶ *Cory Mills* _____

Name:    Cory L. Mills

Title:    Managing Member

Accepted and agreed to as of the date first above written.

WAYGAR CAPITAL INC., as agent

By _____

    Name:    Wayne Ehgoetz
    Title:     President and CEO

[Signature Page to Guaranty Agreement]

**GUARANTY AGREEMENT**

THIS GUARANTY AGREEMENT (this *"Guaranty"*) is made as of May 27, 2021, by and between PACEM DEFENCE HOLDINGS INC., a Delaware corporation (the *"Guarantor"*), in favor of WAYGAR CAPITAL INC., as agent for NINEPOINT CANADIAN SENIOR DEBT MASTER FUND L.P. (the *"Lender"*).

**WITNESSETH:**

WHEREAS, the Guarantor is an affiliate of PACEM Defense LLC, a Virginia limited liability company (*"Defense"*), and ALS, Inc. (f/k/a AMTEC Less Lethal Systems, Inc.), a Wisconsin corporation (*"Amtec"*; and together with Defense, collectively, the *"Borrowers"* and each a *"Borrower"*); and

WHEREAS, the Borrowers have obtained and may from time to time hereafter obtain credit and other financial accommodations from the Lender and has incurred and may from time to time hereafter incur liabilities to the Lender; and

WHEREAS, the Borrowers provide the Guarantor with substantial financial, management, administrative, technical and design support; and

WHEREAS, the interdependent nature of the businesses of the Guarantor and the Borrowers is such that the viability of the Guarantor is dependent upon the continued success of the Borrowers and upon the continuation of the Borrowers' business relationships with the Guarantor, and the continuation thereof necessitates the Borrowers' access to credit and other financial accommodations from the Lender which the Lender will only make available on the condition, among others, that the Guarantor guarantee all indebtedness, obligations and liabilities of the Borrowers from time to time owing to the Lender; and

WHEREAS, the Guarantor will directly and substantially benefit from credit and other financial accommodations extended and to be extended by the Lender to the Borrower.

NOW, THEREFORE, FOR VALUE RECEIVED, and in consideration of advances made or to be made, or credit accommodations given or to be given, to the Borrowers by the Lender from time to time, the Guarantor hereby agrees as follows:

1. The Guarantor hereby guarantees the full and prompt payment to the Lender at maturity and at all times thereafter of any and all indebtedness, obligations and liabilities of every kind and nature of the Borrowers owing to the Lender (including liabilities of partnerships created or arising while the Borrowers may have been or may be a member thereof), however evidenced, whether now existing or hereafter created or arising (and whether arising before or after the filing of a petition in bankruptcy and including all interest, costs, fees, and charges after the entry of an order for relief in a case under Title 11 of the United States Bankruptcy Code or any similar proceeding, whether or not such interest, costs, fees and charges would be an allowed claim in such proceeding), whether direct or indirect, absolute or contingent, or joint or several, and howsoever owned, held or acquired, whether through discount, overdraft, purchase, direct

-656503319.docx
4292694

loan or as collateral, or otherwise (hereinafter all such indebtedness, obligations and liabilities being collectively referred to as the *"Indebtedness"*). Notwithstanding anything in this Guaranty to the contrary, the right of recovery against the Guarantor under this Guaranty shall not exceed $1.00 less than the lowest amount which would render the Guarantor's obligations under this Guaranty void or voidable under applicable law, including fraudulent conveyance law.

2. The Guarantor further agrees to pay all costs and expenses, legal and/or otherwise (including court costs and reasonable attorneys' fees), suffered or incurred by the Lender in enforcing or endeavoring to enforce this Guaranty, in enforcing or endeavoring to collect the Indebtedness, or any part thereof, and in protecting, defending or enforcing this Guaranty in any litigation, bankruptcy or insolvency proceedings or otherwise.

3. The Guarantor agrees that, upon demand, the Guarantor will then pay to the Lender the full amount of the Indebtedness.

4. The Guarantor agrees that it will not exercise or enforce any right of exoneration, contribution, reimbursement, recourse or subrogation available to the Guarantor against any person liable for payment of the Indebtedness, or as to any security therefor, unless and until the full amount owing to the Lender of the Indebtedness has been paid and all commitments, if any, of the Lender to extend credit to or for the account of the Borrowers which, when made, would constitute Indebtedness shall have terminated. The payment by the Guarantor of any amount or amounts to the Lender pursuant hereto shall not in any way entitle any the Guarantor, either at law, in equity or otherwise, to any right, title or interest (whether by way of subrogation or otherwise) in and to the Indebtedness or any part thereof or any collateral security therefor or any other rights or remedies in any way relating thereto or in and to any amounts theretofore, then or thereafter paid or applicable to the payment thereof howsoever such payment may be made and from whatsoever source such payment may be derived unless and until all of the Indebtedness and all costs and expenses suffered or incurred by the Lender in enforcing this Guaranty have been paid in full and all commitments, if any, of the Lender to extend credit to or for the account of the Borrowers which, when made, would constitute Indebtedness shall have terminated and unless and until such payment in full and termination, any payments made by the Guarantor hereunder and any other payments from whatsoever source derived on account of or applicable to the Indebtedness or any part thereof shall be held and taken to be merely payments in gross to the Lender reducing pro tanto the Indebtedness.

5. The Lender may, without any notice whatsoever to any one, sell, assign, or transfer all of the Indebtedness, or any part thereof, or grant participations therein, and in that event each and every immediate and successive assignee, transferee, or holder of or participant in all or any part of the Indebtedness, shall have the right to enforce this Guaranty, by suit or otherwise, for the benefit of such assignee, transferee, holder or participant, as fully as if such assignee, transferee, holder or participant were herein by name specifically given such rights, powers and benefits; but the Lender shall have an unimpaired right to enforce this Guaranty for the benefit of the Lender or any such participant, as to so much of the Indebtedness that it has not sold, assigned or transferred.

-2-

6. This Guaranty is a continuing, absolute and unconditional Guaranty, and shall remain in full force and effect until written notice of its discontinuance executed by the Borrowers and the Guarantor shall be actually received by the Lender, and also until any and all of the Indebtedness created or existing before receipt of such notice shall be fully paid and all commitments, if any, of the Lender to extend credit to or for the account of each Borrower which, when made, would constitute Indebtedness shall have terminated. This is a guaranty of payment and not of collection, and in case the Borrowers fails to pay any Indebtedness when due, the Guarantor agrees to make such payment or to cause such payment to be made punctually as and when the same shall become due and payable, whether at stated maturity, by acceleration or otherwise, and as if such payment were made by the Borrowers. The dissolution of any of the Guarantor shall not terminate this Guaranty until notice of such dissolution shall have been actually received by the Lender, nor until all of the Indebtedness, created or existing or committed to be extended in each case before receipt of such notice shall be fully paid.

7. In case of dissolution, liquidation or insolvency (howsoever evidenced) of, or the institution of bankruptcy or receivership proceedings against the Borrowers or the Guarantor, all of the Indebtedness which is then existing shall, at the option of the Lender, immediately become due or accrued and payable from the Guarantor. All dividends or other payments received from the Borrowers or on account of the Indebtedness from whatsoever source, shall be taken and applied as payment in gross, and this Guaranty shall apply to and secure any ultimate balance that shall remain owing to the Lender.

8. The liability hereunder shall in no way be affected or impaired by (and the Lender is hereby expressly authorized to make from time to time, without notice to anyone), any sale, pledge, surrender, compromise, settlement, release, renewal, extension, indulgence, alteration, substitution, exchange, change in, modification or other disposition of any of the Indebtedness, either express or implied, or of any contract or contracts evidencing any thereof, or of any security or collateral therefor or any guaranty thereof. The liability hereunder shall in no way be affected or impaired by any acceptance by the Lender of any security for or other guarantors upon any of the Indebtedness, or by any failure, neglect or omission on the part of the Lender to realize upon or protect any of the Indebtedness, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, creditors or property of said Borrowers possessed by the Lender toward the liquidation of the Indebtedness, or by any application of payments or credits thereon. The Lender shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on the Indebtedness, or any part of same. In order to hold the Guarantor liable hereunder, there shall be no obligation on the part of the Lender at any time to resort for payment to the Borrowers or to any other guarantor, or to any other person or corporations, their properties or estate, or resort to any collateral, security, property, liens or other rights or remedies whatsoever, and the Lender shall have the right to enforce this Guaranty irrespective of whether or not other proceedings or steps are pending seeking resort to or realization upon or from any of the foregoing are pending.

9. [Reserved.]

10. All diligence in collection or protection, and all presentment, demand, protest and/or notice, as to any and everyone, whether or not the Borrowers or the Guarantor or others, of

-3-

dishonor and of default and of non-payment and of the creation and existence of any and all of the Indebtedness, and of any security and collateral therefor, and of the acceptance of this Guaranty, and of any and all extensions of credit and indulgence hereunder, are expressly waived.

11.     No act of commission or omission of any kind, or at any time, upon the part of the Lender in respect to any matter whatsoever, shall in any way affect or impair this Guaranty.

12.     The Guarantor waives any and all defenses, claims and discharges of the Borrowers, or any other obligor, pertaining to the Indebtedness, except the defense of discharge by payment in full.  Without limiting the generality of the foregoing, the Guarantor will not assert, plead or enforce against the Lender any defense of waiver, release, discharge in bankruptcy, statute of limitations, res judicata, statute of frauds, antideficiency statute, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to the Borrowers or any other person liable in respect of any of the Indebtedness, or any set-off available against the Lender to the Borrowers or any such other person, whether or not on account of a related transaction.  The Guarantor agrees that the Guarantor shall be and remain liable for any deficiency remaining after foreclosure of any mortgage or security interest securing the Indebtedness, whether or not the liability of the Borrowers or any other obligor for such deficiency is discharged pursuant to statute or judicial decision.

13.     If any payment applied by the Lender to the Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of the Borrowers or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence, notwithstanding such application, and this Guaranty shall be enforceable as to such of the Indebtedness as fully as if such application had never been made.

14.     The liability of the Guarantor under this Guaranty is in addition to and shall be cumulative with all other liabilities of the Guarantor after the date hereof to the Lender as a Guarantor of the Indebtedness, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

15.     Any invalidity or unenforceability of any provision or application of this Guaranty shall not affect other lawful provisions and applications hereof, and to this end the provisions of this Guaranty are declared to be severable.

16.     Any demand for payment on this Guaranty or any other notice required or desired to be given hereunder to the Guarantor shall be in writing (including, without limitation, notice by telecopy) and shall be given to the relevant party at its address set forth in the Loan Agreement dated as of the date hereof among the Borrowers and the Lender.  Each such notice, request or other communication shall be effective (i) if given by telecopier, when such telecopy is transmitted to the telecopier number specified in this Section and a confirmation of such telecopy has been received by the sender, (ii) if given by mail, five (5) days after such communication is deposited in the mail, certified or registered with return receipt requested, addressed as aforesaid or (iii) if given by any other means, when delivered at the addresses specified in this Section.

-4-

17.     All payments to be made by the Guarantor hereunder shall be made in the same currency and funds in which the underlying Guaranteed Indebtedness is payable to the Lender in immediately available and freely transferable funds at the place of payment, all such payments to be paid without setoff, counterclaim or reduction and without deduction for, and free from, any and all present or future taxes, levies, imposts, duties, fees, charges, deductions, withholding or liabilities with respect thereto or any restrictions or conditions of any nature.  If the Guarantor is required by law to make, or if any law requires, any deduction or withholding on account of any tax (but excluding any taxes imposed or measured by the net income of the Lender) or other withholding or deduction from any sum payable by the Guarantor hereunder to the Lender, the Guarantor shall pay any such tax or other withholding or deduction and shall pay such additional amount necessary to ensure that, after making any payment, deduction or withholding, the Lender shall receive and retain (free of any liability in respect of any payment, deduction or withholding) a net sum equal to what it would have received and so retained hereunder had no such deduction, withholding or payment been required to have been made.

18.     If any judgment or order expressed in a currency (the *"Judgment Currency"*) other than the currency (the *"Currency of Account"*) in which the underlying Guaranteed Indebtedness is owed to the Lender is rendered against the Guarantor for the payment of any amount owing hereunder, the Lender, after recovery in full of the aggregate amount to which they are entitled pursuant to the judgment or order, will be entitled to receive immediately from the Guarantor the amount of any shortfall of the Currency of Account received by the Lender as a consequence of sums paid in such Judgment Currency (a *"Shortfall Payment"*) if such shortfall arises or results from any variation between the rate of exchange at which the Currency of Account is converted into the Judgment Currency for the purposes of such judgment or order and the rate of exchange at which the Lender is able, acting in a reasonable manner and in good faith, to purchase the Currency of Account with the amount of the Judgment Currency actually received by the Lender. Any Shortfall Payment due hereunder shall be due as a separate and independent obligation of the Guarantor and, until discharged, shall continue in full force and effect.  The term *"rate of exchange"* includes, without limitation, any premiums and costs of exchange payable in connection with the purchase of or conversion into the Currency of Account.

19.     THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE OF NEW YORK in which state it shall be performed by the Guarantor and may not be waived, amended, released or otherwise changed except by a writing signed by the Lender. This Guaranty and every part thereof shall be effective upon delivery to the Lender, without further act, condition or acceptance by the Lender, shall be binding upon the Guarantor and upon the heirs, legal representatives, successors and assigns of the Guarantor, and shall inure to the benefit of the Lender, its successors, legal representatives and assigns.  The Guarantor waives notice of the Lender's acceptance hereof.  This Guaranty may be executed in counterparts and by different parties hereto on separate counterpart signature pages, each of which shall be an original, but all together to be one and the same instrument.

20.     The Guarantor hereby submits to the nonexclusive jurisdiction of any United States District Court for the Southern District of New York and of any New York state court sitting in the Borough of Manhattan in New York City for purposes of all legal proceedings arising out of or relating to this Guaranty or the transactions contemplated hereby.  The Guarantor irrevocably

waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such court has been brought in an inconvenient forum. THE GUARANTOR AND THE LENDER HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY.

[SIGNATURE PAGE TO FOLLOW]

Case 5:26-cv-00207-FL    Document 1-4    Filed 04/01/26    Page 15 of 25

DocuSign Envelope ID: 368C4861-34E6-4B56-B81B-A106C3E012D9

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be executed and delivered as of the date first above written.

"GUARANTOR"

PACEM DEFENCE HOLDINGS INC.

By _____
     Name:    Cory L. Mills
     Title:     CEO

[Signature Page to Guaranty Agreement]

Accepted and agreed to as of the date first above written.

WAYGAR CAPITAL INC., as agent

By _____

    Name:    Wayne Ehgoetz
    Title:    President and CEO

[Signature Page to Guaranty Agreement]

**GUARANTY AGREEMENT**

THIS GUARANTY AGREEMENT (this *"Guaranty"*) is made as of April 15, 2019, by and between Pacem Solution International LLC, a Virginia limited liability company (the *"Guarantor"*), in favor of Waygar Capital Inc., as agent for Ninepoint Canadian Senior Debt Master Fund L.P. (the *"Lender"*).

**WITNESSETH:**

WHEREAS, the Guarantor is an affiliate of PACEM Defense LLC, a Virginia limited liability company (*"Defense"*) and AMTEC Less Lethal Systems, Inc., a Wisconsin corporation (*"Amtec"*; and together with Defense, collectively, the *"Borrowers"* and each a *"Borrower"*); and

WHEREAS, the Borrowers have obtained and may from time to time hereafter obtain credit and other financial accommodations from the Lender and has incurred and may from time to time hereafter incur liabilities to the Lender; and

WHEREAS, the Borrowers provide the Guarantor with substantial financial, management, administrative, technical and design support; and

WHEREAS, the interdependent nature of the businesses of the Guarantor and the Borrowers is such that the viability of the Guarantor is dependent upon the continued success of the Borrowers and upon the continuation of the Borrowers' business relationships with the Guarantor, and the continuation thereof necessitates the Borrowers' access to credit and other financial accommodations from the Lender which the Lender will only make available on the condition, among others, that the Guarantor guarantee all indebtedness, obligations and liabilities of the Borrowers from time to time owing to the Lender; and

WHEREAS, the Guarantor will directly and substantially benefit from credit and other financial accommodations extended and to be extended by the Lender to the Borrower.

NOW, THEREFORE, FOR VALUE RECEIVED, and in consideration of advances made or to be made, or credit accommodations given or to be given, to the Borrowers by the Lender from time to time, the Guarantor hereby agrees as follows:

1. The Guarantor hereby guarantees the full and prompt payment to the Lender at maturity and at all times thereafter of any and all indebtedness, obligations and liabilities of every kind and nature of the Borrowers owing to the Lender (including liabilities of partnerships created or arising while the Borrowers may have been or may be a member thereof), however evidenced, whether now existing or hereafter created or arising (and whether arising before or after the filing of a petition in bankruptcy and including all interest, costs, fees, and charges after the entry of an order for relief in a case under Title 11 of the United States Bankruptcy Code or any similar proceeding, whether or not such interest, costs, fees and charges would be an allowed

35722768_2.docx

claim in such proceeding), whether direct or indirect, absolute or contingent, or joint or several, and howsoever owned, held or acquired, whether through discount, overdraft, purchase, direct loan or as collateral, or otherwise (hereinafter all such indebtedness, obligations and liabilities being collectively referred to as the *"Indebtedness"*). Notwithstanding anything in this Guaranty to the contrary, the right of recovery against the Guarantor under this Guaranty shall not exceed $1.00 less than the lowest amount which would render the Guarantor's obligations under this Guaranty void or voidable under applicable law, including fraudulent conveyance law.

2. The Guarantor further agrees to pay all costs and expenses, legal and/or otherwise (including court costs and reasonable attorneys' fees), suffered or incurred by the Lender in enforcing or endeavoring to enforce this Guaranty, in enforcing or endeavoring to collect the Indebtedness, or any part thereof, and in protecting, defending or enforcing this Guaranty in any litigation, bankruptcy or insolvency proceedings or otherwise.

3. The Guarantor agrees that, upon demand, the Guarantor will then pay to the Lender the full amount of the Indebtedness.

4. The Guarantor agrees that it will not exercise or enforce any right of exoneration, contribution, reimbursement, recourse or subrogation available to the Guarantor against any person liable for payment of the Indebtedness, or as to any security therefor, unless and until the full amount owing to the Lender of the Indebtedness has been paid and all commitments, if any, of the Lender to extend credit to or for the account of the Borrowers which, when made, would constitute Indebtedness shall have terminated. The payment by the Guarantor of any amount or amounts to the Lender pursuant hereto shall not in any way entitle any the Guarantor, either at law, in equity or otherwise, to any right, title or interest (whether by way of subrogation or otherwise) in and to the Indebtedness or any part thereof or any collateral security therefor or any other rights or remedies in any way relating thereto or in and to any amounts theretofore, then or thereafter paid or applicable to the payment thereof howsoever such payment may be made and from whatsoever source such payment may be derived unless and until all of the Indebtedness and all costs and expenses suffered or incurred by the Lender in enforcing this Guaranty have been paid in full and all commitments, if any, of the Lender to extend credit to or for the account of the Borrowers which, when made, would constitute Indebtedness shall have terminated and unless and until such payment in full and termination, any payments made by the Guarantor hereunder and any other payments from whatsoever source derived on account of or applicable to the Indebtedness or any part thereof shall be held and taken to be merely payments in gross to the Lender reducing pro tanto the Indebtedness.

5. The Lender may, without any notice whatsoever to any one, sell, assign, or transfer all of the Indebtedness, or any part thereof, or grant participations therein, and in that event each and every immediate and successive assignee, transferee, or holder of or participant in all or any part of the Indebtedness, shall have the right to enforce this Guaranty, by suit or otherwise, for the benefit of such assignee, transferee, holder or participant, as fully as if such assignee, transferee, holder or participant were herein by name specifically given such rights, powers and benefits; but the Lender shall have an unimpaired right to enforce this Guaranty for the benefit of the Lender or any such participant, as to so much of the Indebtedness that it has not sold, assigned or transferred.

-2-

6. This Guaranty is a continuing, absolute and unconditional Guaranty, and shall remain in full force and effect until written notice of its discontinuance executed by the Borrowers and the Guarantor shall be actually received by the Lender, and also until any and all of the Indebtedness created or existing before receipt of such notice shall be fully paid and all commitments, if any, of the Lender to extend credit to or for the account of each Borrower which, when made, would constitute Indebtedness shall have terminated. This is a guaranty of payment and not of collection, and in case the Borrowers fails to pay any Indebtedness when due, the Guarantor agrees to make such payment or to cause such payment to be made punctually as and when the same shall become due and payable, whether at stated maturity, by acceleration or otherwise, and as if such payment were made by the Borrowers. The dissolution of any of the Guarantor shall not terminate this Guaranty until notice of such dissolution shall have been actually received by the Lender, nor until all of the Indebtedness, created or existing or committed to be extended in each case before receipt of such notice shall be fully paid.

7. In case of dissolution, liquidation or insolvency (howsoever evidenced) of, or the institution of bankruptcy or receivership proceedings against the Borrowers or the Guarantor, all of the Indebtedness which is then existing shall, at the option of the Lender, immediately become due or accrued and payable from the Guarantor. All dividends or other payments received from the Borrowers or on account of the Indebtedness from whatsoever source, shall be taken and applied as payment in gross, and this Guaranty shall apply to and secure any ultimate balance that shall remain owing to the Lender.

8. The liability hereunder shall in no way be affected or impaired by (and the Lender is hereby expressly authorized to make from time to time, without notice to anyone), any sale, pledge, surrender, compromise, settlement, release, renewal, extension, indulgence, alteration, substitution, exchange, change in, modification or other disposition of any of the Indebtedness, either express or implied, or of any contract or contracts evidencing any thereof, or of any security or collateral therefor or any guaranty thereof. The liability hereunder shall in no way be affected or impaired by any acceptance by the Lender of any security for or other guarantors upon any of the Indebtedness, or by any failure, neglect or omission on the part of the Lender to realize upon or protect any of the Indebtedness, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, creditors or property of said Borrowers possessed by the Lender toward the liquidation of the Indebtedness, or by any application of payments or credits thereon. The Lender shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on the Indebtedness, or any part of same. In order to hold the Guarantor liable hereunder, there shall be no obligation on the part of the Lender at any time to resort for payment to the Borrowers or to any other guarantor, or to any other person or corporations, their properties or estate, or resort to any collateral, security, property, liens or other rights or remedies whatsoever, and the Lender shall have the right to enforce this Guaranty irrespective of whether or not other proceedings or steps are pending seeking resort to or realization upon or from any of the foregoing are pending.

9. [Reserved.]

10. All diligence in collection or protection, and all presentment, demand, protest and/or notice, as to any and everyone, whether or not the Borrowers or the Guarantor or others, of

-3-

Case 5:26-cv-00207-FL    Document 1-4    Filed 04/01/26    Page 20 of 25

dishonor and of default and of non-payment and of the creation and existence of any and all of the Indebtedness, and of any security and collateral therefor, and of the acceptance of this Guaranty, and of any and all extensions of credit and indulgence hereunder, are expressly waived.

11. No act of commission or omission of any kind, or at any time, upon the part of the Lender in respect to any matter whatsoever, shall in any way affect or impair this Guaranty.

12. The Guarantor waives any and all defenses, claims and discharges of the Borrowers, or any other obligor, pertaining to the Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Guarantor will not assert, plead or enforce against the Lender any defense of waiver, release, discharge in bankruptcy, statute of limitations, res judicata, statute of frauds, antideficiency statute, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to the Borrowers or any other person liable in respect of any of the Indebtedness, or any set-off available against the Lender to the Borrowers or any such other person, whether or not on account of a related transaction. The Guarantor agrees that the Guarantor shall be and remain liable for any deficiency remaining after foreclosure of any mortgage or security interest securing the Indebtedness, whether or not the liability of the Borrowers or any other obligor for such deficiency is discharged pursuant to statute or judicial decision.

13. If any payment applied by the Lender to the Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of the Borrowers or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence, notwithstanding such application, and this Guaranty shall be enforceable as to such of the Indebtedness as fully as if such application had never been made.

14. The liability of the Guarantor under this Guaranty is in addition to and shall be cumulative with all other liabilities of the Guarantor after the date hereof to the Lender as a Guarantor of the Indebtedness, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

15. Any invalidity or unenforceability of any provision or application of this Guaranty shall not affect other lawful provisions and applications hereof, and to this end the provisions of this Guaranty are declared to be severable.

16. Any demand for payment on this Guaranty or any other notice required or desired to be given hereunder to the Guarantor shall be in writing (including, without limitation, notice by telecopy) and shall be given to the relevant party at its address set forth in the Loan Agreement dated as of the date hereof among the Borrowers and the Lender. Each such notice, request or other communication shall be effective (i) if given by telecopier, when such telecopy is transmitted to the telecopier number specified in this Section and a confirmation of such telecopy has been received by the sender, (ii) if given by mail, five (5) days after such communication is deposited in the mail, certified or registered with return receipt requested, addressed as aforesaid or (iii) if given by any other means, when delivered at the addresses specified in this Section.

-4-

17. All payments to be made by the Guarantor hereunder shall be made in the same currency and funds in which the underlying Guaranteed Indebtedness is payable to the Lender in immediately available and freely transferable funds at the place of payment, all such payments to be paid without setoff, counterclaim or reduction and without deduction for, and free from, any and all present or future taxes, levies, imposts, duties, fees, charges, deductions, withholding or liabilities with respect thereto or any restrictions or conditions of any nature. If the Guarantor is required by law to make, or if any law requires, any deduction or withholding on account of any tax (but excluding any taxes imposed or measured by the net income of the Lender) or other withholding or deduction from any sum payable by the Guarantor hereunder to the Lender, the Guarantor shall pay any such tax or other withholding or deduction and shall pay such additional amount necessary to ensure that, after making any payment, deduction or withholding, the Lender shall receive and retain (free of any liability in respect of any payment, deduction or withholding) a net sum equal to what it would have received and so retained hereunder had no such deduction, withholding or payment been required to have been made.

18. If any judgment or order expressed in a currency (the *"Judgment Currency"*) other than the currency (the *"Currency of Account"*) in which the underlying Guaranteed Indebtedness is owed to the Lender is rendered against the Guarantor for the payment of any amount owing hereunder, the Lender, after recovery in full of the aggregate amount to which they are entitled pursuant to the judgment or order, will be entitled to receive immediately from the Guarantor the amount of any shortfall of the Currency of Account received by the Lender as a consequence of sums paid in such Judgment Currency (a *"Shortfall Payment"*) if such shortfall arises or results from any variation between the rate of exchange at which the Currency of Account is converted into the Judgment Currency for the purposes of such judgment or order and the rate of exchange at which the Lender is able, acting in a reasonable manner and in good faith, to purchase the Currency of Account with the amount of the Judgment Currency actually received by the Lender. Any Shortfall Payment due hereunder shall be due as a separate and independent obligation of the Guarantor and, until discharged, shall continue in full force and effect. The term *"rate of exchange"* includes, without limitation, any premiums and costs of exchange payable in connection with the purchase of or conversion into the Currency of Account.

19. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE OF NEW YORK in which state it shall be performed by the Guarantor and may not be waived, amended, released or otherwise changed except by a writing signed by the Lender. This Guaranty and every part thereof shall be effective upon delivery to the Lender, without further act, condition or acceptance by the Lender, shall be binding upon the Guarantor and upon the heirs, legal representatives, successors and assigns of the Guarantor, and shall inure to the benefit of the Lender, its successors, legal representatives and assigns. The Guarantor waives notice of the Lender's acceptance hereof. This Guaranty may be executed in counterparts and by different parties hereto on separate counterpart signature pages, each of which shall be an original, but all together to be one and the same instrument.

20. The Guarantor hereby submits to the nonexclusive jurisdiction of any United States District Court for the Southern District of New York and of any New York state court sitting in the Borough of Manhattan in New York City for purposes of all legal proceedings arising out of or relating to this Guaranty or the transactions contemplated hereby. The Guarantor irrevocably

-5-

waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such court has been brought in an inconvenient forum. THE GUARANTOR AND THE LENDER HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY.

[SIGNATURE PAGE TO FOLLOW]

-6-

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be executed and delivered as of the date first above written.

"GUARANTOR"

PACEM SOLUTION INTERNATIONAL LLC

By _____
Name: Cory L Mills
Title: CEO

[Signature Page to Guaranty Agreement]

Accepted and agreed to as of the date first above written.

WAYGAR CAPITAL INC., as agent

By _____

Name:     Wayne Ehgoetz
Title:     President and CEO

[Signature Page to Guaranty Agreement]