**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

|  |  |
|---|---|
| NINEPOINT CANADIAN SENIOR DEBT MASTER FUND L.P., <br><br> Plaintiff, <br><br> v. <br><br> PACEM DEFENSE LLC, ALS, INC., PACEM SOLUTION INTERNATIONAL LLC, PACEM DEFENCE HOLDINGS INC., PACEM ESTATE HOLDINGS LLC, AND DSS A.S., <br><br> Defendants. | Civil Action No. 5:26-cv-00207-FL |

## VERIFIED AMENDED COMPLAINT

Ninepoint Canadian Senior Debt Master Fund L.P., a limited partnership organized under the laws of the Cayman Islands ("Ninepoint" or the "Plaintiff"), hereby amends its *Verified Complaint* (ECF No. 1) pursuant to Fed. R. Civ. P. 15 (a)(1)(B) as a matter of course ("Amended Complaint") and files this Amended Complaint against PACEM Defense LLC, ALS, Inc. (f/k/a AMTEC Less Lethal Systems, Inc.), PACEM Solution International LLC, PACEM Defence Holdings Inc., and PACEM Estate Holdings LLC (collectively, "PACEM") and against DSS a.s. ("DSS" and together with PACEM, collectively, the "Defendants"). Ninepoint's claims arise from PACEM's defaults under loan, security and guaranty agreements pursuant to which Ninepoint holds a valid, perfected, first-priority security interest in substantially all of PACEM's assets, including specific, identifiable collateral currently held by U.S. Customs and Border Protection (the "CBP"), consisting of approximately 25,024 units of M430A1 40mm High Explosive Dual Purpose ammunition cartridges (the "Seized Munitions"), at Fort Bragg, primarily located in Cumberland County, North Carolina.

1

DSS is a creditor pursuant to a consent judgment entered to memorialize its settlement of a separate litigation, captioned *DSS a.s. v. Pacem Defense LLC, d/b/a Pacem Defense/ALS*, action no. 1:24-cv-01331 (the "Virginia Action"). The consent judgment, which Defendants negotiated and entered into without any notice to Ninepoint, the senior secured creditor, provides, in part, for the sale of the Seized Munitions (*i.e.,* Ninepoint's collateral) and remittance of proceeds (also Ninepoint's collateral) to DSS (the "Consent Judgment"). Upon information and belief, absent immediate judicial intervention, Defendants' actions will result in the release and transfer of the Seized Munitions (and the proceeds thereof) beyond this Court's jurisdiction—and likely outside the jurisdiction of any United States courts—irreparably impairing Ninepoint's rights as a secured creditor.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is a limited partnership organized under the laws of the Cayman Islands. Plaintiff's citizenship is determined by the citizenship of its partners, none of whom are citizens of the states as Defendants. Ninepoint maintains its principal place of business in Ontario, Canada.

2.      Defendant PACEM Defense, LLC is, upon information and belief, a limited liability company organized under the laws of the State of Virginia.

3.      Defendant ALS, Inc. is, upon information and belief, a corporation organized under the laws of the State of Wisconsin.

4.      Defendant PACEM Solution International LLC is, upon information and belief, a limited liability company organized under the laws of the State of Virginia.

5.      Defendant PACEM Defence Holdings Inc. is, upon information and belief, a corporation organized under the laws of Delaware.

2

6. Defendant PACEM Estate Holdings LLC is, upon information and belief, a limited liability company organized under the laws of the State of Florida.

7. Upon information and belief, each of the PACEM Defendants' principal place of business is in Perry, Florida.

8. Defendant DSS is a joint stock company under the laws of the Czech Republic with a registered office at Kloboucnicka 1735/35, 140 00, Prague, Czech Republic.

9. Upon information and belief, DSS's principal place of business is in Prague, Czech Republic.

10. Upon information and belief, the PACEM Defendants are actively seeking release of the Seized Munitions from CBP custody into their possession or the possession of a third-party buyer at PACEM's direction. Upon information and belief, the Seized Munitions are assets within this District, and therefore PACEM is subject to personal jurisdiction in this Court. *See* **Exhibit W**, *infra*.

11. Upon information and belief, pursuant to the Consent Judgment, Defendant DSS has asserted a financial interest in the proceeds of the Seized Munitions (which are located within this judicial district) and affirmatively seeks to have the Seized Munitions released so that a sale can be completed and DSS may receive a portion of the sale proceeds. DSS's claim to the proceeds of the Seized Munitions is not incidental or attenuated—it is the very relief that DSS sought through the Consent Judgment. By seeking to enforce the Consent Judgment against property situated within this District, DSS has purposely directed its activities toward this forum and has invoked the benefits and protections of its laws. Therefore, DSS is subject to personal jurisdiction in this Court.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

13.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Specifically, this Court can exercise federal enclave jurisdiction over this matter, because the personal property at issue is located in Fort Bragg, which is a federal enclave under the exclusive jurisdiction of the United States as defined by Article I, Section 8, Clause 17 of the United States Constitution.

14.     Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged below occurred in this District and the property that is the subject of this action is situated in this District.

## GENERAL ALLEGATIONS

15.     On or about May 28, 2021, PACEM Defense LLC and ALS, Inc., as borrowers (the "Borrowers"), and PACEM Solution International LLC, PACEM Defence Holdings Inc., and PACEM Estate Holdings LLC, as guarantors (the "Guarantors," and together with the Borrowers, the "Obligors"), entered into that certain Amended and Restated Loan Agreement, with Waygar Capital Inc., as agent for Ninepoint Canadian Senior Debt Master Fund L.P. (the "Lender") (including subsequent amendments thereto, the "Amended Loan Agreement"). A true and correct copy of the Amended Loan Agreement is attached hereto as **Exhibit A**.

16.     On April 15, 2019, Waygar Capital Inc., as agent for Ninepoint, on the one hand, and PACEM Defense LLC, PACEM Solution International LLC, and ALS, Inc., on the other hand, entered into a security agreement, to secure the obligations under the Amended Loan Agreement

4

(the "Security Agreement"). A true and correct copy of the Security Agreement is attached hereto as **Exhibit B**.

17. The Security Agreement granted Ninepoint a security interest in substantially all of the assets of PACEM Defense LLC, PACEM Solution International LLC, and ALS, Inc., including, without limitation, accounts, contract rights, payment intangibles, general intangibles, inventory, equipment, financial assets, and all proceeds thereof (collectively, the "Collateral").

18. On or about May 27, 2021, PACEM Estate Holdings LLC and PACEM Defence Holdings Inc. executed an Assumption and Supplement to Security Agreement, thereby becoming bound by and granting liens against the Collateral, pursuant to the Security Agreement (the "Assumption and Supplement to Security Agreement"). A true and correct copy of the Assumption and Supplement to Security Agreement is attached hereto as **Exhibit C**.

19. To further secure the obligations under the Amended Loan Agreement, the Guarantors executed and delivered to Ninepoint certain guaranty agreements, including: (a) that certain Guaranty Agreement dated April 15, 2019 by PACEM Solution International LLC; (b) that certain Guaranty Agreement dated May 27, 2021 by PACEM Defence Holdings Inc.; and (c) that certain Guaranty Agreement dated May 27, 2021 by PACEM Estate Holdings LLC (collectively, the "Guaranties" and each a "Guaranty"). True and correct copies of the Guaranties are attached hereto as **Exhibit D**.

20. Pursuant to the Guaranties, the Guarantors unconditionally guaranteed the full payment and performance of all obligations owing to Ninepoint under the Amended Loan Agreement, Security Agreement, and the Assumption and Supplement to Security Agreement (collectively, the "Loan Documents").

21. From 2022 to 2024, the Obligors and Ninepoint entered into multiple amendments to the Amended Loan Agreement, including a First Amendment (March 22, 2022), a Second Amendment (April 29, 2022), a Third Amendment (June 3, 2022), a Fourth Amendment (November 10, 2022), and a Fifth Amendment (April 16, 2024) (collectively, the "Amendments"). True and correct copies of each of the Amendments are attached hereto as **Exhibits E-I**.

22. Ninepoint perfected its security interests in the Collateral by filing UCC financing statements in the appropriate jurisdictions, including against: PACEM Defense LLC, PACEM Solution International LLC, PACEM Defence Holdings Inc., AMTEC Less Lethal Systems, Inc (now, ALS) and PACEM Estate Holdings LLC.

23. True and correct copies of the UCC financing statements are attached hereto as **Exhibits J-R**.

24. By virtue of the Loan Documents and UCC filings, Ninepoint holds valid, perfected, and first-priority security interests in substantially all of the assets of the Obligors and their proceeds.

25. The Obligors defaulted under the Amended Loan Agreement by, among other things, failing to pay all outstanding principal, accrued interest, and other charges due at maturity on December 31, 2024 (the "Default").

26. On or about August 6, 2025, Waygar Capital Inc. assigned to Plaintiff all of Waygar Capital Inc.'s right, title, interest, claim and demand in and to the Amended Loan Agreement and the Credit Documents (as defined in the Amended Loan Agreement), including the Guaranty (the "Omnibus Loan Assignment"). A true and correct copy of the Omnibus Loan Assignment is attached hereto as **Exhibit S**.

6

27. Plaintiff made written demand upon the PACEM Defendants, including Guarantors, for payment of all sums due and owing on August 18, 2025 (the "Demand"), but Defendants failed and/or refused to pay. A true and correct copy of the Demand is attached hereto as **Exhibit T**.

28. As a result of the Default, Ninepoint exercised its contractual rights to accelerate the indebtedness and declare all obligations immediately due and payable.

29. As of April 2026, the Obligors' outstanding indebtedness to Ninepoint exceeded Cdn$100 million, exclusive of ongoing accruals.

30. The Collateral includes specific, identifiable goods, including the Seized Munitions and the proceeds thereof.

31. The Seized Munitions constitute inventory and/or proceeds of inventory within the meaning of the Security Agreement and are therefore (along with the proceeds of the Seized Munitions) subject to Ninepoint's first-priority perfected security interest.

**Original Contract for the Seized Munitions**

32. Upon information and belief, the Seized Munitions were initially sold pursuant to a June 27, 2023 contract between Pacem Defense LLC and Battle Born Munitions Inc. (the "PACEM-BBM Agreement").

33. The terms of the PACEM-BBM Agreement made delivery of the Seized Munitions contingent on several conditions, including export approval as required through the United States Department of State, the United States Department of Commerce, Export Administration Regulations, and the United States Bureau of Alcohol, Tobacco, Firearms and Explosives.

34. Upon information and belief and as evidenced by the seizure of the Seized Munitions by CBP, BBM did not possess the necessary regulatory authority to export the Seized Munitions and accordingly delivery was never effectuated under the PACEM-BBM Agreement.

35. Because delivery is a requirement for title to transfer from a seller to a buyer under a sales contract, failure to deliver the Seized Munitions means that title could not have transferred away from PACEM. Accordingly, Ninepoint's rights as a secured creditor of PACEM continue to extend to the Seized Munitions.

36. The Seized Munitions were seized by CBP in Leland, North Carolina on or about October 11, 2023, due to substantial deficiencies in the licensing and legally required export approval that led CBP to conclude that transportation or export of the Seized Munitions would be unlawful.

37. Upon information and belief, the Seized Munitions were transported to and are currently held by CBP in Fort Bragg, North Carolina.

38. Although CBP maintains physical custody of the Seized Munitions, PACEM retains an ownership interest in them and, therefore, the potential ability to direct their release, designate purchasers, and control their ultimate disposition.

39. PACEM is actively attempting to obtain release of and sell or transfer the Seized Munitions.

40. The Seized Munitions are export-controlled, movable goods that, once released, can be transferred internationally.

**Contract for Grenades Entered into by PACEM and DSS and the Virginia Action**

41. Upon information and belief, after CBP took the Seized Munitions into custody, Pacem Defense LLC and DSS entered into a separate agreement on or about December 18, 2023,

8

under which eight total shipments of M430A1 HEDP grenades were to be delivered to DSS by Pacem Defense LLC (the "PACEM-DSS Agreement").

42. The Seized Munitions were not among the grenades that were to be sold under the PACEM-DSS Agreement (the "DSS Grenades").

43. As of the time the PACEM-DSS Agreement was executed, CBP already had custody of the Seized Munitions. Accordingly, delivery of the Seized Munitions under the PACEM-DSS Agreement was no longer contemplated nor anticipated.

44. Upon information and belief, including information contained in the filings in the Virginia Action, PACEM did not deliver any grenades to DSS under the PACEM-DSS Agreement.

45. On or about July 31, 2024, DSS filed the Virginia Action against PACEM for violation of the PACEM-DSS Agreement.

46. Without informing Plaintiff of the existence of the Virginia Action, PACEM and DSS negotiated and agreed to the Consent Judgment in that action, which was subsequently entered by the court on August 19, 2025 in which, *inter alia*, PACEM agreed to obtain and sell or cause to be sold the Seized Munitions and to remit a portion of the proceeds of those sales for the benefit of DSS. A true and correct copy of the Consent Judgment is attached hereto as **Exhibit U**.

47. Upon information and belief, PACEM agreed to undertake efforts to obtain and hold the Seized Munitions themselves and sell the same as a source of funding for its settlement payment.

48. Despite the existence of Ninepoint's UCC financing statements, and their effect of establishing public notice of Ninepoint's superior perfected security interest in the Seized Munitions and the proceeds thereof (*see* **Exhibits J-R**), DSS either failed to perform a basic search

9

that would have revealed Ninepoint's superior interest or failed to acknowledge that interest in advance of entering into its settlement with PACEM.

49. PACEM, through its contractual agreement with Ninepoint, was fully and actually on notice of the existence of Ninepoint's first priority perfected security interest in PACEM's assets including the Seized Munitions (as PACEM had granted such liens to Ninepoint). However, upon information and belief, PACEM failed to disclose the existence of Ninepoint's first priority security interest to the court in the Virginia Action at any point prior to entry of the Consent Judgment. DSS also failed to do so and should be considered on notice of Plaintiff's interest given that Ninepoint's UCC financing statements are a matter of public record and were available to DSS through a routine search at all relevant times.

50. PACEM likewise neglected to apprise Ninepoint of the Virginia Action or the Consent Judgment until the court in the Virginia Action entered a restraining order against Pacem Defense LLC, Pacem Solutions International LLC, Pacem Estate Holdings, and Pacem North Canada on February 17, 2026 restraining those PACEM entities and related persons or entities from transferring assets in order to preserve the value of assets available to satisfy the Consent Judgment in that case (the "Virginia Restraining Order"), a true and correct copy of which is attached hereto as **Exhibit V**.

51. Thereafter, Ninepoint moved to intervene in the Virigina Action on March 13, 2026 to apprise the Court of Ninepoint's first priority security interest in the Collateral, including the Seized Munitions ("Ninepoint's Motion").

52. On May 8, 2026, after a hearing, the Court denied Ninepoint's Motion and, in part, stated:

> I'm not concerned about priorities or anything else. I'm only concerned about the case that was filed here, the case that was settled here, and then the enforcement of that settlement agreement . . . And somebody else is going to figure out the priorities at some other time.

*See*, Virginia Action, May 8, 2026 Hearing Transcript at 16:14-16:20.

53.    As a result of Ninepoint's inability to intervene in the Virginia Action, its security interest in the Seized Munitions and the sales proceeds remains at risk.

54.    In their continued efforts to wrongfully circumvent Ninepoint's security interest, Defendants have acknowledged in sworn filings in the Virginia Action that they are actively seeking to obtain and sell the Seized Munitions. By way of example, in a Joint Status Report filed on March 25, 2026, Defendants represented that they "have not yet sold the 25,024 M430A1 HEDP [grenades] previously seized by U.S. Customs and Border Protection" and that they are undertaking ongoing "efforts to obtain and sell" those munitions. A true and correct copy of the March 25, 2026 Joint Status Report is attached hereto as **Exhibit W**.

55.    On information and belief, the party that was—and may remain—in active discussions with PACEM regarding the purchase of the Seized Munitions is a company known as "MGS LLC," further demonstrating both PACEM's efforts and intention to sell the Seized Munitions, and therefore the urgent need for judicial intervention to prevent the unauthorized disposition of Ninepoint's Collateral.

56.    Upon information and belief, DSS has disclaimed all interest in the Seized Munitions in writing to the CBP and has reported disclamation of that interest in filings it has submitted under penalty of perjury in the Virginia Action. *See* Virginia Action, ECF No. 145, at 6 ("DSS's counsel supplied to PACEM's counsel executed written releases from DSS and BBM disclaiming interest in the seized grenades.").

57.    Upon information and belief, Defendants have previously engaged in reallocation and redirection of munitions across multiple transactions, demonstrating a risk of further diversion.

58.     If released and sold, there is a substantial risk that the Seized Munitions and the sales proceeds thereof will be transferred outside the United States, beyond the jurisdiction of this Court, and irretrievably lost to Ninepoint as secured collateral.

59.     As a result, Ninepoint will suffer immediate and irreparable harm.

60.     Monetary damages are inadequate because the subject Collateral is specific and identifiable, proceeds may be dissipated or untraceable, and Ninepoint's secured creditor rights will be impaired once the subject Collateral is transferred.

61.     Accordingly, Ninepoint is entitled to declaratory and injunctive relief, as well as possession of the Collateral.

**FIRST CLAIM FOR RELIEF**
(As to all Defendants – Declaratory Judgment under 28 U.S.C. § 2201)

62.     Plaintiff repeats and realleges paragraphs 1 through 61 as if fully set forth herein.

63.     An actual, present, and justiciable controversy exists between Plaintiff and Defendants concerning Plaintiff's rights in and to the Seized Munitions and the proceeds thereof.

64.     Plaintiff holds a valid, perfected, and first-priority security interest in substantially all of PACEM's assets, including the Seized Munitions and the proceeds thereof.

65.     Plaintiff's interest in the Seized Munitions and the proceeds thereof is senior to the interests of all Defendants.

66.     The Seized Munitions constitute "Collateral" within the meaning of the Loan Documents, as defined in Section 2 of the Preliminary Statements of the Security Agreement, including as inventory and/or proceeds of inventory. *See* **Exhibit B** at 1-3.

67.     Defendants' conduct, including their efforts to obtain release of and transfer the Seized Munitions, threatens to impair and defeat Plaintiff's rights as a secured creditor.

68.     Plaintiff seeks a declaration that:

12

a.	the Seized Munitions and the proceeds thereof constitute Collateral under the Loan Documents;

b.	Plaintiff therefore holds a valid, perfected, and first-priority security interest in the Seized Munitions and the proceeds thereof;

c.	Plaintiff's interest in the Seized Munitions and the proceeds thereof are senior to PACEM's interest, if any, in the Seized Munitions and the proceeds thereof;

d.	Plaintiff's interest in the Seized Munitions and the proceeds thereof are senior to DSS's interest, if any, in the Seized Munitions and the proceeds thereof;

e.	The Consent Judgment entered in the Virginia Action does not operate to supersede Plaintiff's interest;

f.	Plaintiff has the right, upon default, to control the disposition of the Seized Munitions;

g.	Plaintiff has the right to take actions to affect the release of the Seized Munitions from CBP and to sell the Seized Munitions to apply the proceeds to satisfy a portion of the debt owed to Plaintiff by PACEM; and

h.	Defendants may not transfer, encumber, sell or otherwise dispose of the Seized Munitions without Plaintiff's consent.

69.	A declaratory judgment is necessary to resolve the parties' rights and prevent irreparable harm.

**SECOND CLAIM FOR RELIEF**
(As to PACEM – Action for Possession of Seized Munitions)

70.	Plaintiff repeats and realleges paragraphs 1 through 69 as if fully set forth herein.

71.	The Seized Munitions constitute specific, identifiable personal property.

13

72. Plaintiff has a superior right to possession of the Seized Munitions by virtue of: (a) its perfected security interests; and (b) PACEM's default under the Loan Documents.

73. The Loan Documents provide that Plaintiff is entitled to possession of PACEM's personal property, including without limitation the Seized Munitions, upon default.

74. Although the Seized Munitions are currently held by the CBP, PACEM appears to retain control over their release and disposition.

75. PACEM's wrongful exercise of control over the disposition of the Seized Munitions is to the exclusion of Plaintiff's rights.

76. By reason of PACEM's default under the Loan Documents, Plaintiff is entitled to immediate possession of the Seized Munitions upon their release from CBP custody, or, in the alternative, to have the Seized Munitions delivered to a receiver or custodian to be identified by Ninepoint and, upon approval of that receiver or custodian by the Court, to permit receipt of the Seized Munitions and the proceeds of those sales can be applied to the outstanding debt owed to Plaintiff by PACEM under the Loan Documents and applicable law, as authorized by Section 10(c) of the Security Agreement.

**THIRD CLAIM FOR RELIEF**
(As to all Defendants – Temporary Restraining Order and Preliminary Injunction)

77. Plaintiff repeats and realleges paragraphs 1 through 76 as if fully set forth herein.

78. Plaintiff is entitled to immediate emergency relief pursuant to Rule 65 of the Federal Rules of Civil Procedure to prevent the imminent dissipation of the Seized Munitions and the sales proceeds thereof.

79. The Seized Munitions at issue are specific, identifiable property consisting of approximately 25,024 units of M430A1 40mm High Explosive Dual Purpose ammunition cartridges currently held by the CBP.

14

80. Upon information and belief, Defendants are actively seeking to obtain release of the Seized Munitions from the CBP and to transfer or sell such munitions to third parties.

81. Once released, the Seized Munitions and the sales proceeds thereof will be transferred internationally and beyond the jurisdiction of this Court, rendering any judgment ineffectual and depriving Plaintiff of its secured collateral.

82. Plaintiff will suffer immediate and irreparable harm absent emergency relief because: (a) the Seized Munitions are unique, identifiable collateral; (b) the Seized Munitions are subject to imminent release; (c) the Seized Munitions and the sales proceeds will be transferred outside the United States; and (d) Plaintiff's security interest cannot be restored once the Seized Munitions and the sales proceeds are dissipated.

83. Plaintiff is likely to succeed on the merits because: (a) Plaintiff holds a valid, perfected, first-priority security interest in the Seized Munitions and the sales proceeds thereof; (b) PACEM is in default under the Loan Documents; and (c) Defendants have no right to dispose of the Seized Munitions without Plaintiff's consent.

84. The balance of equities strongly favors Plaintiff because Plaintiff seeks only to preserve the status quo, while PACEM is in default and, in conjunction with DSS, seeks to dissipate the secured Seized Munitions and the sales proceeds thereof.

85. The public interest favors granting emergency relief to enforce Plaintiff's secured creditor rights and prevent the unlawful transfer of export-controlled munitions.

86. Plaintiff is therefore entitled to a temporary restraining order and preliminary injunction enjoining Defendants from: (i) transferring, selling, assigning, or otherwise disposing of the Seized Munitions; (ii) directing, requesting, or facilitating the release of the Seized Munitions from the CBP; (iii) modifying or pursuing export licenses relating to the Seized

15

Munitions; and (iv) otherwise interfering with Plaintiff's rights in the Seized Munitions and the sales proceeds thereof.

**WHEREFORE**, Plaintiff prays to the Court:

(i) On Plaintiff's *First Claim for Relief*, Plaintiff is entitled to a declaratory judgment, pursuant to the provisions of 28 U.S.C. § 2201, determining that (a) the Seized Munitions and the sales proceeds thereof constitute Collateral under the Loan Documents; (b) Plaintiff holds a valid, perfected, and first priority security interest in the Seized Munitions and the proceeds thereof; (c) Plaintiff's security interest in the Seized Munitions and the sales proceeds thereof is senior to the security interest of DSS, if any, in the Seized Munitions and the sales proceeds thereof; (d) Plaintiff has the right to control the disposition of the Seized Munitions; and (e) Defendants may not transfer, encumber, sell or otherwise dispose of the Seized Munitions without Plaintiff's consent;

(ii) On Plaintiff's *Second Claim for Relief*, that the Court grant Plaintiff immediate possession of the Seized Munitions upon their release from CBP custody, including, if necessary, through the appointment of a receiver, custodian, or other Court-appointed or approved agent, and the right to sell the Seized Munitions pursuant to the Loan Documents and applicable law and to apply the proceeds of the Seized Munitions towards the outstanding balance owed to Plaintiff;

(iii) On Plaintiff's *Third Claim for Relief*, that the Court immediately enter a temporary restraining order and preliminary injunction enjoining Defendants, their respective employees, members, shareholders, officers, directors, assigns, licensees, representatives and agents from (a) transferring, selling, assigning or otherwise disposing the Seized Munitions; (b) directing, requesting, or facilitating the release or transfer of the Seized Munitions from the CBP until further order of the Court; (c) modifying or pursuing export licenses relating to the Seized Munitions; and

16

(d) otherwise unlawfully interfering with Plaintiff's rights in the Seized Munitions and the sales proceeds thereof;

(iv)     For an award of Plaintiff's reasonable attorneys' fees under the Loan Documents and applicable law;

(v)     That all costs of this action be taxed against Defendants; and

(vi)     For such further relief this Court deems just and proper to accord Plaintiff full relief in this matter.

Respectfully submitted, this the 18th day of May, 2026.

**PRYOR CASHMAN LLP**

BY: */s/* Lara Kasten Hoffman
Lara Kasten Hoffman
NY Bar No. 5413372
Austin Collier
NY Bar No. 5968912
7 Times Square
New York, New York 10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
Emails: lhoffman@pryorcashman.com
acollier@pryorcashman.com
*Counsel for Plaintiff Ninepoint*
*Canadian Senior Debt Master Fund L.P.*

**WILLIAMS MULLEN**

BY: */s/* Kelly Colquette Hanley
Kelly Colquette Hanley
N.C. State Bar No. 25130
301 Fayetteville Street, Suite 1700
Raleigh, North Carolina 27601
Telephone: (919) 981-4000
Facsimile: (919) 981-4300
Email: khanley@williamsmullen.com

*Local Civil Rule 83.1(d) Counsel for Plaintiff*
*Ninepoint Canadian Senior Debt Master Fund*
*L.P.*

17

**<u>DECLARATION</u>**

I, Paul Stevenson, declare as follows:

I am a Director of Ninepoint Canadian Senior Debt Master Fund GP Inc., general partner of Ninepoint Canadian Senior Debt Master Fund LP, the Plaintiff herein.

I have read Plaintiff's Amended Complaint against PACEM Defense LLC, ALS, Inc., (f/k/a AMTEC Less Lethal Systems, Inc.), PACEM Solution International LLC, PACEM Defence Holdings Inc., PACEM Estate Holdings LLC, and DSS, a.s. I know the contents thereof to be true based on my own personal knowledge, except as to such matters therein based on my information and belief, and, as to such matters, I believe them to be true.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of May, 2026.

_____
Paul Stevenson

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 18th day of May 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notifications to all counsel of record.

**WILLIAMS MULLEN**

BY: <u>*/s/* Kelly Colquette Hanley</u>
    Kelly Colquette Hanley
    N.C. State Bar No. 25130
    301 Fayetteville Street, Suite 1700
    Raleigh, North Carolina 27601
    Telephone: (919) 981-4000
    Facsimile: (919) 981-4300
    Email: khanley@williamsmullen.com

    Local Civil Rule 83.1(d) Attorney for Plaintiff